In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana




______________________________




No. 06-02 -00055 -CV


______________________________








IN THE INTEREST OF KESHAWN DEONTE DANIELS,


JUSTIN E. DANIELS, CHELSEA LASHAUN THOMPSON,

AND QUINTEN RAYE COWLEY, CHILDREN







 



On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 02C0321-202





 







Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant




O P I N I O N




 Dorothy Virginia Thompson Battle (Battle) appeals from an order terminating her parental rights to her four children. 
Each child was represented by counsel at the termination hearing, as was Battle and the three fathers of her children. On
March 13, 2002, the trial court signed an order terminating the parental rights of all involved.

 The Texas Department of Protective and Regulatory Services has filed a motion to dismiss the appeal. (1) Appeals from
termination proceedings are controlled by Tex. Fam. Code Ann. § 263.405 (Vernon Supp. 2002). As provided by that
statute, this is an accelerated appeal under Tex. R. App. P. 26.1(b). The Notice of Appeal was therefore due within twenty
days after the judgment was signed, on April 2, 2002.

 The Notice of Appeal in this case was filed on April 11, 2002, and was therefore untimely. Battle had filed her Notice of
Appeal nine days after the deadline prescribed by Tex. R. App. P. 26.1(a) and six days before expiration of the period in
which an extension could be sought. See Tex. R. App. P. 26.3 (stating one can move to extend time to perfect appeal if he
or she acts within fifteen days after expiration of deadline for filing notice). 

 The rule also requires that the party file both the notice of appeal (in the trial court) and a motion to extend time (in the
appellate court) in order to obtain an extension of time from this court to file the notice of appeal. The Texas Supreme
Court has held that a motion for extension of time is "necessarily implied" when an appellant "acting in good faith" files a
notice of appeal during the fifteen-day grace period, but fails to file the motion to extend time. Jones v. City of Houston,
976 S.W.2d 676, 677 (Tex. 1998), applying Verburgt v. Dorner, 959 S.W.2d 615 (Tex. 1997) (analyzing filing of bond
under earlier version of rules). 

 Verburgt implies a motion for extension of time for filing a late notice of appeal. It does not eliminate the need to provide
a reasonable explanation for the late filing. Cotton v. Cotton, 57 S.W.3d 506, 509 (Tex. App.-Waco 2001, no pet. h.); see,
e.g., Chilkewitz v. Winter, 25 S.W.3d 382, 383 (Tex. App.-Fort Worth 2000, no pet.) (per curiam); Indus. Servs. U.S.A., Inc.
v. Am. Bank, N.A., 17 S.W.3d 358, 359 (Tex. App.-Corpus Christi 2000, no pet.) (per curiam); Smith v. Houston Lighting &
Power Co., 7 S.W.3d 287, 288 (Tex. App.-Houston [1st Dist.] 1999, no pet.).

 Under the Court's analysis of the rules, Battle was obligated to show this court that the failure to timely file occurred in
spite of her good faith and reasonably explain why her appeal was not timely perfected. Jones, 976 SW.2d at 677; Miller v.
Greenpark Surgery Ctr. Assocs., 974 S.W.2d 805, 807-08 (Tex. App.-Houston [14th Dist.] 1998, no pet.). In this case,
despite filing the Notice of Appeal, Battle did not attempt to show she was acting in good faith, nor did she reasonably
explain the need for an extension, as is also required by Tex. R. App. P. 10.5(b)(1)(C) and 26.3(b). 

 Battle also did not attempt to provide the necessary information after the State moved to dismiss the appeal for want of
jurisdiction. Under these facts, the requirements set out by the Rules of Appellate Procedure to confer jurisdiction on this
court have not been met. See Kidd v. Paxton, 1 S.W.3d 309, 312 (Tex. App.-Amarillo 1999, no pet.). 

 The appeal is dismissed for want of jurisdiction.







 Ben Z. Grant

 Justice



Date Submitted: June 26, 2002

Date Decided: June 27, 2002



Do Not Publish

1. We requested a response from opposing counsel, but none was received. The motion by the State refers both to the
untimeliness of the Notice of Appeal and to Battle's failure to file a required statement of point or points on which she
intended to appeal as required by Tex. Fam. Code Ann. § 263.405(b) (Vernon Supp. 2002). 



se
to the State's motion on August 2, 2002. One week later, the trial court granted the State's motion
after conducting a hearing on the issue. The trial court then held that a wealth of inculpatory
evidence existed, including eyewitness testimony and testimony from the defendant's wife
establishing the defendant's identity as the perpetrator. Based on that evidence, the trial court found
DNA testing would not serve to exculpate Jacobs or dissuade the State from prosecuting the case. 
Accordingly, the trial court denied Jacobs' motion for post-conviction DNA testing. Jacobs filed his
notice of appeal to this Court on September 12, 2002. 

II. Jurisdiction

 The State contends this Court lacks jurisdiction to consider the merits of Jacobs' appeal. The
trial court signed the order denying Jacobs' motion for DNA testing on August 12, 2002. The order
was  filed  with  the  district  clerk  on  August  13,  2002.  Jacobs  filed  his  notice  of  appeal  on
September 12, 2002-thirty-one days after the order was signed and thirty days after it was filed. 
Unless a motion for new trial is filed, an appellant must file a notice of appeal within thirty days of
the trial court's judgment to vest jurisdiction over the case with the appellate court. Tex. R. App. P.
26.2(a). 

 The Amarillo Court of Appeals recently addressed a similar case involving procedural
jurisdiction. In In re Marriage of Gary, No. 07-01-0466-CV, 2002 WL 1806800, at *1 (Tex.
App.-Amarillo Aug. 7, 2002, no pet. h.) (unpublished order on jurisdiction), the appellant filed his
notice of appeal one day late, although the certificate of service predated the filing deadline. The
Amarillo court, citing Verburqt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997) said, "[a] motion for
extension of time is implied when an appellant acting in good faith files, within the 15 day period
in which the appellant would be entitled to move to extend the filing deadline, documents showing
a bona fide intent to appeal." Gary, 2002 WL 1806800, at *1. The Amarillo court then granted the
implied motion for extension of time to file a notice of appeal, thereby conferring the court with
jurisdiction to consider the merits of the appeal.

 In the case now before this Court, Jacobs' notice of appeal was filed by the district clerk one
day after the thirty-day deadline. The certificate of service states the notice was mailed two days
before the deadline. "A document received within ten days after the filing deadline is considered
timely filed if . . . it was deposited in the mail on or before the last day for filing." Tex. R. App. P.
9.2(b)(1). Under the mailbox rule, we deem Jacobs' notice of appeal timely filed. Alternatively,
granting the implied motion for extension of time to file the notice of appeal would be sufficient to
confer jurisdiction over the case with this Court. Jurisdiction exists for us to reach the merits of
Jacobs' appeal.

III. DNA Testing

A. Standard of Review

 A trial court's denial of a motion for post-conviction DNA testing is reviewed under a
bifurcated process. Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); Green v. State, No. 04-02-00221-CR, 2002 WL
31694228, at *1 (Tex. App.-San Antonio Dec. 4, 2002, pet. filed). We afford almost total deference
both to the trial court's determination of historical fact and to its application of law-to-fact issues that
turn on credibility and demeanor. Rivera, 89 S.W.3d at 59; Green, 2002 WL 31694228, at *1. But
we  review  de  novo  all  other  application  of  law-to-fact  issues.  Rivera,  89  S.W.3d  at  59;
Green, 2002 WL 31694228, at *1. This de novo review usually includes the ultimate issue in post-conviction DNA testing cases, "whether a reasonable probability exists that exculpatory DNA would
prove innocence." Rivera, 89 S.W.3d at 59.

 Citing Rivera, Jacobs contends that the scope of the evidence an appellate court may review
is limited to the evidence relating to the motion and/or hearing on the motion for DNA testing. We
do not read Rivera to either directly or indirectly so narrowly limit the scope of our review. 
Undoubtedly, the trial court would have before it the court's entire file when ruling on a motion for
post-conviction DNA testing. Because this case had been previously appealed, the trial court had
access to testimony in the reporter's record. (4) In short, the trial court itself would not be limited to
examining evidence offered by the parties during post-conviction litigation. If we are to review de
novo those issues of fact that do not turn on witness credibility or demeanor, we must have available
the same evidence to which the trial court had access. See id. To hold otherwise would thwart our
ability to effectively review these types of cases.

 Second, requiring the nonmoving party-which in DNA cases will usually be the State-to
reoffer the entirety of its evidence (so as to counter the movant's claims regarding false
identification) would be extremely burdensome and a waste of judicial economy. Such a procedure
might turn DNA hearings into quasi mini-trials, complete with sponsoring witness testimony,
affidavits of interested parties, and challenges to evidentiary admissibility. 

 Third, a plain reading of the Texas Rules of Appellate Procedure contemplates our ability to
supplement the clerk's record with any relevant item that is part of the entire record below. See Tex.
R. App. P. 34.5(c)(1). The trial court is usually in the best position to take judicial notice of items
already in evidence from previous proceedings, including witness testimony, recorded confessions
(written or oral), photographs, or other tangible evidence. See Tex. R. Evid. 201. This Court may
also take notice of its own file from the direct appeal of this case. Cf. Tex. Capital Sec. v. Sandefer,
No. 06-02-00042-CV (Tex. App.-Texarkana June 27, 2003) (appellate court implicitly taking
judicial notice of findings in sister court's opinion in prior appeal between same parties). 
Accordingly, we do not find the scope of our ability to review the evidence to be limited in the
manner suggested by Jacobs.

B. Obtaining DNA Testing Under Chapter 64

 At oral argument, Jacobs reasoned he should prevail on appeal if he could establish by a
preponderance of the evidence that there is a reasonable probability that DNA testing would have
created a reasonable doubt among the jury at trial. We do not concur with Jacobs' reasoning.

 To obtain post-conviction DNA testing, the convicted person must establish by a
preponderance of the evidence that a reasonable probability exists that he or she would not have been
prosecuted or convicted if "exculpatory results had been obtained through DNA testing." (5) Rivera,
89 S.W.3d at 59 (citing Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i), (2)(A)). This
requirement is not a two-part test. "The convicted person is not required to show both that a
reasonable probability exists that the person would not have been prosecuted and that the person
would not have been convicted." S.J. of Tex., 77th Leg., R.S. 995 (2001) (emphasis added),
<http://www.capitol.state.tx.us/sjrnl/77r/pdf/4-2.pdf>, at *25. Exculpatory evidence is that which
tends to free the defendant from blame or accusation or otherwise establish his or her innocence. 
Black's Law Dictionary 577, 588 (7th ed. 1999).

 The statutory requirement that testing results be exculpatory is not met if the DNA evidence
would "merely muddy the waters." Instead, the evidence must tend to prove the defendant's
innocence. Rivera, 89 S.W.3d at 59 (citing Kutzner v. State, 75 S.W.3d 427, 439 (Tex. Crim. App.
2002)). Stated differently, DNA testing must conclusively outweigh all other evidence of the
convicted's guilt. Id.; Thompson v. State, No. 01-02-00253-CR, 2002 WL 31618806, at *3 (Tex.
App.-Houston [1st Dist.] Nov. 21, 2002, pet. filed).



 Jacobs contends,

 the evidence establishes that the testing could result in evidence of the involvement
of a third party: not the victim and not Jacobs. Therefore, had the biological
evidence been tested and resulted in evidence of the presence of another person's
DNA besides that of the victim (exculpatory evidence), a reasonable probability
exists that Jacobs would not have been prosecuted or convicted of aggravated sexual
assault. 


In essence, Jacobs hopes mitochondrial DNA testing will show the hair samples came from a third
party. Such evidence, however, would "merely muddy the waters" by demonstrating that a third
party had, at some point in time (but not necessarily at the time of the crime), been inside the sleeper
compartment of the tractor truck. Such evidence would not, on its own, exonerate Jacobs and
thereby support the ordering of a DNA test. See Rivera, 89 S.W.3d at 59; Kutzner, 75 S.W.3d at
439.

 Accordingly, the evidence before the trial court did not show DNA testing would prove
Jacobs' actual innocence. This conclusion might be different if the sexual assault examination had
yielded seminal or blood DNA evidence from the perpetrator. However, the presence of a third-party
hair on Jacobs' bed linens or clothing not belonging to the victim does not necessarily prove Jacobs'
innocence. We hold the trial court did not err by denying Jacobs' motion for post-conviction DNA
testing. 




 We affirm the trial court's judgment.

 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 19, 2003

Date Decided: July 8, 2003


Publish
1. Deoxyribonucleic Acid. DNA is "a nucleic acid that constitutes the genetic material of all
cellular organisms and the DNA viruses." Dorland's Illustrated Medical Dictionary 447
(27th ed. 1988).
2. The indictment alleged Jacobs used or exhibited a firearm during the commission of the
sexual assault in the sleeping compartment of his tractor truck. 
3. Mitochondrial DNA testing involves analyzing the strands of DNA contained in the
mitochondria. The mitochondria are "small spherical to rod-shaped components (organelles) found
in the cytoplasm of cells, enclosed in a double membrane, with an internal membrane space between
the two units, the inner one infolded into the interior of the organelle as a series of projections
(cristae)." Dorland's Illustrated Medical Dictionary 1043 (27th ed. 1988). "A single
mitochondrion contains 37 genes on a circular mitochondrial DNA, compared with about 35,000
genes contained in the nuclear DNA." Comm. on Sci., Eng'g, & Pub. Policy, The Nat'l Acad.
of Sciences, Scientific & Med. Aspects of Human Reprod. Cloning, 267 (2002), 
<http://books.nap.edu/books/0309076374/html/267.html>. 
4. The trial court's judgment reflects it reviewed the reporter's record of the trial before issuing
its judgment on the State's motion for reconsideration. In support of its opposition to further testing,
the State's motion to reconsider had incorporated references to specific portions of the reporter's
record. 
5. Additionally, "Article 64.03(a) only permits a trial court to order DNA testing if the court
finds that identity was or is an issue in the case." Green v. State, No. 04-02-00221-CR, 2002 WL
31694228, at *1 (Tex. App.-San Antonio Dec. 4. 2002, pet. filed) (citing Tex. Code Crim. Proc.
Ann. art. 64.03(a)(1)(B) (Vernon Supp. 2003)). The parties in this case, however, agree that identity
was and is an issue. Therefore, we need not address this element of the movant's burden of proof. 
See Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B).