**Marvin and Dorothy KIDD, Appellants,**

v.

**Micah PAXTON d/b/a Paxton Construction Co., Appellee.**

No. 07–99–0157–CV.

Court of Appeals of Texas, Amarillo.

Aug. 26, 1999.

Joe Heflin, Law Office of Joe Heflin, Lubbock, for appellant.

Warren Tabor, Tabor & Tabor, Levelland, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

### ON MOTION FOR REHEARING

BRIAN QUINN, Justice.

Pending before the court is the motion for rehearing of Marvin and Dorothy Kidd. Said motion is denied.

### *Background*

We dismissed this cause by opinion and judgment dated June 9, 1999. The Kidds had filed their notice of appeal 14 days after the deadline prescribed by Texas Rule of Appellate Procedure 26.1(a) and on the last day before expiration of the period in which an extension could be sought. *See* TEX.R.APP. P. 26.3 (stating that one can move to extend the time to perfect appeal if he acts within 15 days after expiration of the deadline for filing the notice). Despite filing the notice, they did not attempt to reasonably explain the need for an extension, as required by Rules of Appellate Procedure 10.5(b)(1)(C) and 26.3(b). That is, the Kidds were obligated to reasonably explain why their appeal was not timely perfected. *Jones v. City of Houston*, 976 S.W.2d 676, 677 (Tex.1998); *Miller v. Greenpark Surgery Center Assocs., Ltd.*, 974 S.W.2d 805, 807–808 (Tex.App.—Houston [14th Dist.] 1998, no writ) (requiring same). Nor did they attempt to do so after Micah Paxton d/b/a Paxton Construction Co. (Paxton) moved to dismiss the appeal for want of jurisdiction. Rather, the court heard nothing from them until it had dismissed the proceeding and received their motion for rehearing (which motion was filed on the last day of the 15 day grace period). Through the motion, the Kidds informed us that the notice was untimely *because* counsel 1) "misunderst[ood] ... the law" by "erroneously calculat[ing] the perfection deadline by

adding 30 days to the date the trial court overruled the Motion for New Trial," and 2) was preoccupied by other work. Why appellants did not respond to the motion to dismiss went unaddressed, however.

### *Standard of Review*

■ The Supreme Court has held that the reasonable explanation contemplated by the rules of appellate procedure need only consist of a plausible statement of circumstances indicating that the failure to comply with the deadline was neither deliberate nor intentional " 'but ... [rather] the result of inadvertance [sic], mistake, or mischance ... even though counsel or his secretary may appear to have been lacking in that degree of diligence which careful practitioners normally exercise.' " *Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 670 (Tex.1989) (quoting *Sloan v. Passman*, 538 S.W.2d 1 (Tex.Civ.App.—Dallas 1976, no writ)); *see Dimotsis v. State Farm Lloyds*, 966 S.W.2d 657 (Tex.App.—San Antonio 1998, no pet.) (stating the same). In other words, default arising from negligence, as opposed to intentional or deliberate choice, equates a reasonable excuse. *Id.*

### *Application of Standard*

*a. Miscalculation by Adding 30 Days to the Date Court Denied New Trial*

■ As previously mentioned, counsel allegedly failed to timely file the notice of appeal because he "misunderst[ood] ... the law" by "erroneously calculat[ing] the perfection deadline by adding 30 days to the date the trial court overruled the Motion for New Trial." We find the excuse implausible and, therefore, unreasonable. This is so because the trial court overruled the Kidds' motion for new trial on March 4, 1999. Thirty days from that date was April 3, 1999. Given counsel's statement that he mistakenly calculated the pertinent deadline to be 30 days from the date new trial was denied, he should have filed the notice of appeal on or before April 3. Yet,

the document was not tendered until some 26 days later, on April 29. Furthermore, nothing in the motion purported to explain why the additional 26 day delay occurred. So, the failure of counsel to abide by the deadline which he miscalculated, and the absence of any explanation for the additional 26 day delay, prevents us from holding that the miscalculation constituted a plausible excuse for the delay.[1]

### b. Preoccupation

■ As to the second reason, that is, preoccupation with other duties, we too find it deficient. First, counsel did inform us of the nature of the cases which distracted him. They included a contested probate "immediately prior to and following the original deadline," "several dockets working [sic] in criminal cases," a "heavy case load of civil cases," and "several matters set in both the District and County courts of Crosby and Lubbock count[ies][and] ... the Federal Bankruptcy Court." Yet, how these matters interfered with counsel's performance lacked factual development. Whether the cases were complex, required his complete attention, or prevented him from returning to his office for a period of time sufficient to draft a notice of appeal goes unmentioned.

Similarly unknown are the dates on which the criminal cases and "matters" in the district, county, and bankruptcy courts were set, which information would be crucial in evaluating their potential impact upon counsel's actions. So too would explaining what was meant when referring to the "original deadline" be of import. Again, that deadline could have been either the perceived deadline of April 3 or the original and true deadline of April 14; which one he was referring to would affect the impact these conflicts had upon his ability to comply with the rules of appellate procedure and the plausibility of the excuse. Whether counsel had staff members or others who could have assisted him in his endeavor also went unaddressed.

Simply put, we are left to speculate about indicia essential to our assessing the nexus between the excuse and default. Saying that one has a plethora of other work alone is not sufficient. A causative nexus between that work and the default must be established through fact. And, because we are given inadequate data upon which to divine that nexus, the excuse offered is not a plausible statement of circumstances evincing something short of intentional or deliberate conduct.[2]

Next, the dissenting opinion does not persuade us to hold otherwise for several reasons. First, the propositions offered in that opinion inherently conflict. For instance, it initially suggests that the plausibility of the excuses offered should not be analyzed. Allegedly, we may only accept the explanation offered by the appellant at face value and, if indicative of conduct short of intentional and deliberate, consider it adequate. However, in the final paragraph of the same opinion, the dissent states that it would direct the "appellees to

---

1. Had counsel complied with his belief that the deadline was 30 days after new trial was denied and acted accordingly, the notice of appeal would have been timely. This is so because the true deadline was April 14. Filing the notice 30 days after new trial was denied on March 4 would have been well within the actual deadline.

2. Incidentally, counsel does not state, in this particular excuse, that because of his other business he somehow forgot about the appeal and the need to perfect it. He merely suggests that he had other business to which to attend. So, his excuse can reasonably and easily be read as indicating that he prioritized his work and that this appeal was not assigned a priority rating. And, when so reading it, it illustrates intentional conduct. So too can it be said that accepting more work than one attorney can do is a conscious choice. The risks inherent in pursuing such a course are hardly unknown to the practitioner. Indeed, counsel here implicitly acknowledges them by stating that he has since endeavored to reduce some of his workload. So, it could be said that in accepting excessive work with knowledge of the risks inherent therein, an attorney deliberately and intentionally accepts the chance of their occurrence.

respond to the Motion for Reconsideration" and "then review the record for affirmative evidence" of deliberate or intentional conduct on the part of appellant's counsel. And, therein lies the inconsistency. If we are to forego analysis and simply rely on the appellant's explanation, as initially posited by the dissent, then there is no need to require the opposing party to respond; nor would we be obligated to peruse the record for affirmative evidence of deliberate or intentional conduct. On the other hand, if we are to peruse the record for affirmative evidence of deliberate conduct, then we cannot simply rely on the untested utterances of appellant. In sum, one or the other tack suggested by the dissent must be right; both cannot be.[3]

Second, adopting the proposition that we merely accept what appellant says without critique would mean that anything would be enough, regardless of its logical coherence and so long as it evinces nothing more than negligence. For instance, one saying that he did not meet the filing deadline because his computer momentarily failed seven days before the deadline would be sufficient. This would be so because 1) the excuse evinces no deliberate or intentional *mens rea*, and 2) the plausibility of how something occurring long before the deadline caused one to miss the deadline allegedly matters not. So, it would have to be accepted despite its lack of logical coherence and causative nexus.[4] We do not believe the Supreme Court

intended such a result in drafting appellate rule 10(b)(1)(C) and rendering *Garcia v. Kastner Farms, Inc.*

Nor do we believe that the *Garcia* court intended to strip the word "reasonably" from the phrase "reasonably explain," as the dissent implicitly suggests. This is so because the *Garcia* court declared that the "standard enunciated in *Heritage Life* [was] correct." *Garcia v. Kastner Farms, Inc.*, 774 S.W.2d at 670. And, in *Heritage Life*, the court defined the standard as "'any *plausible* statement of circumstances indicating that failure to file ... was not deliberate or intentional....'" *Heritage Life Ins. Co. v. Heritage Group Holding Corp.*, 751 S.W.2d 229, 231 (Tex. App.—Dallas 1988, writ denied) (quoting *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977)) (emphasis added). So, the word "reasonable" has not been redacted from the test. Rather, it survives in the word "plausible." And, to avoid ignoring the edict of *Garcia*, we assess the reasonableness of the excuse by gauging its *plausibility*.

Third, the dissent's reference to the absence of harm as a justification for allowing the Kidds to proceed is also misplaced. This is so because we perceive the presence of harm. For instance, Micah Paxton loses the benefit of a judgment which lawfully became final when the Kidds failed to comply with the rules of appellate procedure.[5] We also find harm to the legal

---

**3.** Another inconsistency appears and it involves 1) the admonition to forego conducting a "factual sufficiency review" and 2) the statement that a response would be requested and the record would then be perused for affirmative evidence of deliberate or intentional conduct. Garnering a response and perusing the record for the affirmative evidence alluded to is nothing short of testing the validity of the appellant's excuse against the facts of record. And, that is nothing short of conducting a "factual sufficiency review," which is something we cannot do, according to the dissent.

**4.** So too would we be bound to accept explanations which the record utterly belies if the

dissent were correct. And, attempt to intentionally misrepresent fact to gain an extension of time is not unknown to this court.

**5.** One could argue that so obtaining victory is nothing but largesse. Yet, our system of justice historically provides for same. For instance, failing to timely supplement discovery can lead to the exclusion of key evidence and effectively grant the opponent certain victory. TEX.R. CIV. P. 193.6; *See Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 148 (Tex.App.—Austin 1993, writ denied) (holding that the failure to supplement discovery by providing accurate identification information of certain witnesses precluded the presentation of those witnesses at trial). That is lar-

profession in telling its members that deadlines are unimportant as long as they are negligent in compling with them. So, not only is a litigant at bar harmed but so does the practice of law suffer by fostering a setting wherein negligence is not only condoned but rewarded.[6]

In sum, counsel is not unknown to this court. Through his past appeals, we have found him to be an able attorney. Yet, a court may not 1) ignore precedent or rule of law, 2) interpret precedent out of context, or 3) be swayed by motives other than those arising from the need to comply with mandatory precedent. Should deviation from written procedure or the reinterpretation of controlling authority be needed, then it lies with the Texas Supreme Court to amend its rules or create an exception. But, given our interpretation of current law, and because the allegations contained in the motion for rehearing do not constitute facts plausibly explaining the need for an extension or the cause of the default, we deny the motion for rehearing.

PHIL JOHNSON, Justice, dissenting from order on motion for rehearing.

I dissent from the Court's denial of the Motion for Reconsideration of appellants.

In *Verburgt v. Dorner,* 959 S.W.2d 615 (Tex.1997), the supreme court reiterated its policy on interpreting the Appellate Rules[1] in matters where the viability of an appeal is in question:

> This Court has never wavered from the principle that appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal. We have repeatedly held that a court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction.... Our decisions reflect the policy embodied in our appellate rules that disfavors disposing of appeals based upon *harmless procedural defects.*(emphasis added). *Id.* at 616.

We are to construe the Rules liberally and not impose requirements resulting in loss of the right of appeal unless absolutely necessary to effect the purposes of a Rule. *Id.* at 616–17. *See also Jones v. City of Houston,* 976 S.W.2d 676 (Tex.1998); *Stangel v. Parker,* 945 S.W.2d 114 (Tex. 1997).

The filing of appellants' Notice of Appeal resulted in the implied filing of a motion for extension of time for the perfecting of the appeal, and our appellate jurisdiction exists over the appeal if appellants' Notice of Appeal was a bona fide attempt to invoke our appellate jurisdic-

---

gesse to the opposing party. Failing to timely answer a petition can also result in a default judgment. TEX.R. CIV. P. 239; *Ex parte Stiles,* 958 S.W.2d 414, 419 (Tex.App.—Waco 1997, pet. denied). That too is largesse to the recipient of the judgment. And, because the defaulting party must satisfy specific criteria to vitiate the largess, our jurisprudence recognizes that the recipient may keep the gift he received. If this were not so, then the defaulting party would not have to satisfy those specific criteria.

6. That this is true is illustrated by a simple example. Suppose a judgment was entered against client X and client Y. Further suppose that 1) client X's attorney advised client X to forego appeal because settled precedent was against him, 2) in accepting the advice, client X intentionally opted not to perfect his appeal within 30 days of the judgment, and 3) on the 31st day after judgment, the Texas Supreme Court changed the precedent and, thereby, breathed life into client X's possible contentions. Under that scenario, the decision not to timely appeal was quite intentional and deliberate. Thus, client X's excuse would not satisfy *Meshwert* or *Garcia,* and he could not appeal. Yet, if client Y failed to timely perfect an appeal simply because his attorney forgot what Texas Rule of Appellate Procedure 26.1 said, then he could appeal. Why? Because Y's attorney was just negligent in failing to read the rule. How the latter scenario justifies relief while the former does not escapes rationalization.

1. All references to a 'Rule' or to 'Rules' will be to the Texas Rules of Appellate Procedure unless noted otherwise.

tion. *See Jones,* 976 S.W.2d at 677; *Verburgt,* 959 S.W.2d at 615–16. By addressing the merits of whether appellants offer a "reasonable explanation" for failing to timely file their Notice of Appeal, the majority apparently concludes that appellants made a bona fide attempt to invoke our jurisdiction. I agree with that conclusion. The record reflects no evidence that the filing of the notice was not a bona fide attempt to invoke the appellate jurisdiction of this court.

Our original dismissal of appellants' appeal was because appellants did not "reasonably explain" their need for an extension of time to perfect their appeal. It is not absolutely necessary to effect the purposes of any Rule that we refuse to allow appellants to make their explanation for needing an extension of time via a Motion for Reconsideration. *See Verburgt,* 959 S.W.2d at 616–17. Thus, it is appropriate that we consider the explanation which appellants offer in their Motion for Reconsideration for needing the extension. If their explanation indicates conduct short of intentional or deliberate noncompliance with the time period for perfecting their appeal without the granting of an extension, then appellants are entitled to have their appeal considered. *See Jones,* 976 S.W.2d at 677; *Garcia v. Kastner Farms, Inc.,* 774 S.W.2d 668 (Tex.1989).

As noted by the majority, the supreme court has approved the description of an appellant's "reasonable explanation" for needing an extension of time in which to perfect an appeal as being "[A]ny plausible statement of circumstances *indicating* that failure to file ... was *not deliberate or intentional,* but was the result of inadvertence, mistake, or mischance ...." (emphasis added). *Garcia,* 774 S.W.2d at 670 (quoting *Sloan v. Passman,* 536 S.W.2d 575 (Tex.Civ.App.—Dallas 1976, no writ) (Guittard, C.J., dissenting at 538 S.W.2d

1).[2] *Garcia* further emphasized that the proper focus in determining whether a "reasonable explanation" exists is whether a deliberate or intentional failure to comply with the appellate rules has occurred, and that "*Any* conduct short of deliberate or intentional noncompliance qualifies [as a reasonable explanation]." (emphasis added). *Garcia,* 774 S.W.2d at 670; *see also Meshwert v. Meshwert,* 549 S.W.2d 383, 384 (Tex.1977).

I view the standard used by the majority to evaluate appellants' explanation for their failure to perfect an appeal without the need for an extension of time as too strict in light of the guidance of *Garcia, Verburgt* and *Jones.* The majority tests appellants' explanation for internal consistency, detailed factual support, and evidentiary support for a causal relationship between the failure to perfect an appeal without an extension of time being granted and the circumstances relied on as explanation. The supreme court appears to require only a statement of circumstances *indicating* that appellants' failure to comply with the notice of appeal deadline was not intentional or deliberate. *Garcia,* 774 S.W.2d at 670. The supreme court has not mandated that an appellant's explanation pass a factual sufficiency review or an evidentiary causal relationship review as to the need for an extension of time. On the contrary, the court has specifically stated that (1) appellate courts are not to impose requirements resulting in loss of the right of appeal unless absolutely necessary to effect the purposes of an appellate rule; and (2) the policy of the court and the appellate rules disfavors disposing of appeals on harmless procedural defects. *Verburgt,* 959 S.W.2d at 616–17.

In the verified Motion for Reconsideration, counsel for appellants sets out circumstances indicating the need for an extension of time for perfecting the appeal.

**2.** *Garcia* addressed former Tex.R.App. P. 41(a)(1) and 41(a)(2), whereas we address the current appellate rules revised effective September 1, 1997. The revised rules require appellants to reasonably explain the need for an extension of time. Tex.R.App. P. 10.5(b)(1)(C).

The circumstances included counsel's being a sole practitioner, his misunderstanding of the law concerning the time for perfection of appeal and his crowded trial and hearing schedule. Logical inconsistencies in the explanation by counsel for appellants and gaps in the time periods covered by the explanation for needing an extension do not evidence a deliberate or intentional disregard of the rules for perfecting appeals. Once appellants offered an explanation which *indicated* that they did not show an intentional disregard for the time requirements for perfecting an appeal, they met the requirements of Rule 10.5(b)(1)(C) as interpreted by *Meshwert* and *Garcia.* Our guidance is clear: appellate courts should not dismiss an appeal for a procedural defect if any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal. *Verburgt,* 959 S.W.2d at 616. Evidence of failure to timely act by appellants (or their counsel) or a factual omission in appellants' explanation for needing the extension of time, therefore, should not be held to deprive this court of jurisdiction to hear the merits of the appeal, given the facts in this case. *See Garcia,* 774 S.W.2d at 670.

Had appellants filed their Notice of Appeal fourteen days earlier, they would not have been required to offer any explanation whatsoever for the time they took to perfect their appeal. Appellee has not claimed harm from the extra fourteen days it took appellants to file their Notice of Appeal. We are to dispose of appeals on the merits and not on harmless procedural defects, unless disposition on the basis of the procedural defect is absolutely necessary to effect the purposes of a Rule. *Verburgt,* 959 S.W.2d at 616–17. In light of existing supreme court precedent, no such necessity is demonstrated in this case.

I would not deny the Motion for Reconsideration at this time. As we are required to do by Rule 49.2, before granting a Motion for Reconsideration, I would request appellees to respond to the Motion for Reconsideration. I would then review the record for affirmative evidence that appellants or their counsel intentionally or deliberately violated the time limits prescribed for perfecting their appeal. We should then set aside our dismissal for want of jurisdiction and reinstate the appeal unless we determine from the record, based on affirmative evidence of such intent, that appellants or their counsel intended not to comply with the time limit specified for perfecting their appeal. *See Jones,* 976 S.W.2d at 677; *Verburgt,* 959 S.W.2d at 616–17; *Garcia,* 774 S.W.2d at 670.