NUMBER 13-05-542-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


KEYSTONE ARCHITECTS, A.J. GARZA,

AND SUZETTE M. SOUCIE, Appellants,


v.


LANAI DEVELOPMENT, L.L.C., GENE

ALLEN AND JUDY ALLEN, Appellees.

 
 

On appeal from the 33rd District Court of Llano County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Garza, Benavides, and Vela


Memorandum Opinion by Justice Garza
 

 This is a residential construction dispute pertaining to two upscale residences built
in the Horseshoe Bay subdivision in Llano County, Texas. On appeal, appellants,
Keystone Architects, A.J. Garza, and Suzette Soucie, raise twenty-two issues and contend
that the trial court erred in rendering judgment in favor of appellees, Lanai Development,
Gene Allen, and Judy Allen, for actual and exemplary damages against Garza and
Keystone and actual damages against Soucie. We reverse and render judgment in favor
of appellants.

I. Factual and Procedural Background


 Garza is a licensed architect who does business as Keystone Architects. Soucie,
Garza's wife, serves as a part-time employee of Keystone. Soucie has a degree in
architecture, but is not licensed; therefore, she does not practice. In 1999, the Allens first
came in contact with Garza and Soucie by telephone at the recommendation of their son. 
Keystone made subsequent advertising efforts to the Allens to promote a "design-build"
concept. Specifically, the Allens desired to build two properties, the Avivar house and the
Brook house, in the Horseshoe Bay subdivision for investment purposes.

 After meeting in the fall of 1999, the Allens and Keystone agreed in principal that
Keystone would provide "design-build" services for both of the houses in an attempt to
save the Allens money. In essence, the Allens agreed to allow Keystone to design the
houses and then act as the builder for the projects in the event that the Allens decided to
proceed with construction. The parties reduced their agreement (the "Part I Agreement")
to writing in January 2000. In accordance with the Part I Agreement, Keystone provided
the design services for the houses and the Allens paid Keystone a $5,000.00 retainer. (1) 

 In April 2000, Keystone tendered a second contract (the "Part II Agreement") to the
Allens providing that Keystone would act as the builder of the two houses. At this time, the
Allens obtained financing from Frost National Bank ("Frost Bank") to undertake the
construction project. In order to obtain 100% financing from Frost Bank and to obtain other
tax and business advantages, the Allens formed a corporate entity, Lanai Development,
L.L.C., to serve as the vehicle for the construction. As a result of forming the corporate
entity, the Allens assigned the two lots on which the subject houses were to be built to
Lanai Development, L.L.C. (2)

 Construction of the two houses commenced in September 2000. The construction
project went much slower than anticipated. The first house was substantially completed
in November 2001 and the second house was substantially completed in January 2002. 
However, the design and construction work performed at the two houses did not comply
with building codes, industry standards, or with the plans and specifications provided by
Keystone for the project. 

 Judy Allen testified at trial that the entire construction project went over budget by
more than $180,903.09 on the Avivar house and $143,951.63 on the Brook house as of
August 2002. (3) The Allens attempted to repair the structural defects themselves. They
allege that Keystone's actions resulted in a drastic reduction of the market value of the
houses and forced them to borrow an additional $84,000.00 in August 2001 and
$104,000.00 in February 2002 to make necessary repairs.

 The Allens unsuccessfully attempted to market the houses themselves. Frost Bank
eventually conducted a foreclosure sale which resulted in $296,766 in proceeds for the
Avivar house and $279,054 in proceeds for the Brook house, amounts significantly lower
than the Allens' original target sales prices of $500,000 per house. (4)

 On February 14, 2003, the Allens filed suit against Garza, Soucie, and Keystone
(collectively "Keystone") on behalf of themselves and Lanai Development, L.L.C.
(collectively "Lanai"), alleging breach of contract, breach of fiduciary duty, negligence,
fraud, and deceptive trade practice act ("DTPA") violations and seeking actual and
exemplary damages. On October 13, 2003, Keystone served requests for disclosure on
Lanai, seeking information on economic damages and the identities of expert witnesses. 

 Subsequently, on September 1, 2004, Lanai filed a first amended petition re-asserting claims for DTPA violations, negligence, breach of contract, breach of fiduciary
duty, and fraud. Lanai also asserted new claims for negligent misrepresentation,
negligence per se, and unjust enrichment, claiming at least $500,000 in actual damages,
special or consequential damages, attorney's fees, costs of court, and consulting and
expert fees. In response, on September 7, 2004, Keystone filed a motion for partial
summary judgment on traditional and no-evidence grounds. After a hearing conducted on
September 24, 2004, the trial court granted Keystone's motion for partial summary
judgment as to Lanai's breach of fiduciary duty and negligence per se claims. (5) 

 On September 30, 2004, Keystone filed a motion to exclude the expert testimony
of Norm Cooper, asserting that Lanai did not timely describe all the subject areas of
testimony to be addressed by Cooper. The record does not contain an order signed by the
trial court denying Keystone's motion. However, on the first page of Keystone's motion to
exclude the expert testimony of Norm Cooper, the trial court has handwritten the following
message: "Motion presented to the court 6 October 2004 and it is in all things overruled
[therefore] denied." On October 1, 2004, Lanai filed a motion for leave to file a second
amended petition with the trial court. (6) On the same day, Lanai filed their second amended
petition providing additional support for their claim for damages pertaining to their DTPA
and breach of contract claims.

 The trial court commenced a bench trial of this matter on October 4, 2004. Prior to
commencing direct examination of Judy Allen, Lanai filed a motion for continuance, which
the trial court denied. (7) Also on the first day of the trial, Keystone filed a written objection
to Lanai's evidence of damages. Keystone asserted that Lanai failed to disclose "the
amount and any method of calculating economic damages" pursuant to rule 194.2(d) of the
Texas Rules of Civil Procedure and the documents upon which their economic claims were
based. (8) See Tex. R. Civ. P. 194.2(d), 194.4. Lanai filed their response on the same day
and contended that they timely provided Keystone with evidence of economic damages,
in the form of the deposition testimony of Michael Falk, Senior Vice-President of Frost
Bank, and Judy and Gene Allen. Lanai attached the cover page of the court reporter's
record of the deposition testimony of Judy and Gene Allen. (9) Lanai asserted that Gene
Allen testified that the plan was to sell the Avivar house for $485,000 to $635,000 and the
Brook house for $380,000 to $500,000. Lanai also asserted that Gene Allen testified that
Garza promised to pay $20,000 to repair roof problems, but he never followed through on
that promise. Moreover, Lanai contended that Judy Allen's deposition testimony revealed
(1) the cost of construction for the Avivar house was to be approximately $436,000, which
was well over the $263,000.00 budgeted, and (2) that a spa was budgeted for the Avivar
house in the amount of $5,040.00, but Garza replaced the spa to save money. As a result
of Garza's actions, Judy Allen testified that the spa essentially was a "dysfunctional" hot
pool that ran over budget by $10,000. Based on the above mentioned references, Lanai
contended that it complied with rule 194.2(d) of the rules of civil procedure. See Tex. R.
Civ. P. 194.2(d). 

 Lanai also used their response to Keystone's economic damages objection to
address Keystone's motion to strike Norm Cooper's expert testimony. Lanai contended
that it produced detailed reports and Cooper's resume to Keystone, in compliance with rule
194.2(f) of the rules of civil procedure. Lanai further contended that Cooper had personal
knowledge of the subject matter and attached copies of Cooper's inspection reports of the
two houses and a copy of the building codes. 

 The trial court overruled Keystone's objections to Lanai's evidence of damages. (10) 
On October 11, 2004, after both parties had rested their cases-in-chief, Lanai filed
"PLAINTIFFS' SUBMISSION REGARDING REQUEST FOR DAMAGES" with the trial
court, asserting that Keystone violated the DTPA and that it was entitled to treble damages
or exemplary damages upon a finding of knowing or unconscionable conduct. Lanai
further chronicled damages sustained for their negligence, breach of contract, DTPA, and
fraud claims. Specifically, Lanai calculated damages associated with the alleged DTPA
violations as follows:

 A. Diminution in Market Value: (11)

 

 Value of Avivar without Defects $ 395,000-600,000

 Foreclosure Sale Amount 280,000

 Loss 220,000-285,000

 

 Value of Brook without Defects 500,000-565,000

 Foreclosure Sale Amount 297,000

 Loss 98,000-300,000

 

 Overcharge for Donald Thompson Fees 17,000

 A.J. Garza Promise to Pay Fee for FRS Roofing 20,000

 Defendant's Fee overcharges 27,335

 

 Total Loss (w/ lower market value) 382,335


Lanai provided other calculations for damages associated with the alleged DTPA violations
based upon (1) "Investment Loss," which amounted to $486,380 in damages, (2)
"Restitution--Return of Fees Earned by Defendants (unjust enrichment/fraud)," amounting
to $197,000 in damages, (3) "Over Budget/Itemized Defective Items," which amounted to
$438,775 in damages, and (4) "Loss of Profits," yielding $264,335 in damages.

 On February 2, 2005, the trial court ruled in favor of Lanai on all of their claims and
awarded the following: (1) actual damages of $382,335; (2) exemplary damages of
$764,670; (3) attorney's fees of $148,303 for trial, $25,000 for success on appeal, and
$10,000 for a successful appeal to the supreme court; (4) prejudgment interest of 10% on
the total damage amount from the date of judgment; and (5) costs of court. On March 4,
2005, Keystone filed a motion for new trial and alternate motion to modify judgment. On
March 10, 2005, the trial court issued twenty-four (24) findings of fact and seven (7)
conclusions of law. On March 14, 2005, Keystone filed written objections to the findings
of fact and conclusions of law and requested amended or additional findings by the trial
court. Subsequently, on March 31, 2005, the trial court issued additional findings of fact
numbered 25 through 106. On April 8, 2005, the trial court denied Keystone's motion for
new trial and alternate motion to modify judgment. This appeal ensued.

II. Analysis

A. Disclosure of Economic Damages

 In their first issue, Keystone alleges that the trial court erred in denying their motion
to exclude evidence of economic and actual damages because this evidence was not
timely disclosed within the discovery period. Conversely, Lanai argues that information
concerning economic and actual damages was readily available and exchanged with
Keystone through discovery, negotiations, and pleadings prior to trial. Specifically, Lanai
references the deposition testimony of the Allens and Falk as timely-submitted evidence
establishing economic damages. To further support their contentions pertaining to
damages, Lanai asserts that Keystone did not establish that it was unfairly surprised or
prejudiced if damages were, indeed, not timely disclosed. Finally, Lanai cites a litany of
cases explaining that "a trial court cannot abuse their [its] discretion if it reaches the right
result, even for the wrong reason," and "[i]f a correct decision is made by a trial court in its
judgment, then assignment by the trial court of a wrong reason for granting such judgment
is not reversible error." See, e.g., Johnson v. Fuselier, 83 S.W.3d 892, 898 n.4 (Tex.
App.-Texarkana 2002, no pet.); Rutledge v. Staner, 9 S.W.3d 469, 472 (Tex. App.-Tyler
1999, pet. denied); In re Acevedo, 956 S.W.2d 770, 775 (Tex. App.-San Antonio 1997, no
pet.); Hawthorne v. Guenther, 917 S.W.2d 924, 931 (Tex. App.-Beaumont 1996, writ
denied); Luxenberg v. Marshall, 835 S.W.2d 136, 141-42 (Tex. App.-Dallas 1992, orig.
proceeding); Ace Drugs Marts, Inc. v. Sterling, 502 S.W.2d 935, 940 (Tex. Civ.
App.-Corpus Christi 1973, writ ref'd n.r.e).

 1. Applicable Law

 Decisions about the admissibility of evidence are left to the sound discretion of the
trial court. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Gee
v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Pegasus Energy Corp. v.
Cheyenne Petroleum Co., 3 S.W.3d 112, 133 (Tex. App.-Corpus Christi 1999, pet.
denied). An abuse of discretion exists when the court's decision is without reference to
guiding rules or principles or is arbitrary or unreasonable. See Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The mere fact that a trial judge may
decide a matter within his discretionary authority in a different manner than an appellate
judge in a similar circumstance does not demonstrate that an abuse of discretion has
occurred. Id. at 242 (citing Sw. Bell Tel. Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965);
Jones v. Strayhorn, 321 S.W.2d 290, 295 (Tex. 1959)). An appellate court must uphold
the trial court's evidentiary ruling if there is any legitimate basis for the ruling. See State
Bar of Tex. v. Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1989). Moreover, we will not reverse
a trial court for an erroneous evidentiary ruling unless the error probably caused the
rendition of an improper judgment. See Tex. R. App. P. 44.1; see also Gee, 765 S.W.2d
at 396.

 Under the Texas Rules of Civil Procedure, which govern civil actions in the district
court, a party may request disclosure of the amount of damages sought and any method
of calculating economic damages. Tex. R. Civ. P. 2, 194.2(d). Comment 2 to rule 194.2
provides that subsection (d) is "intended to require disclosure of a party's basic assertions,
whether in prosecution of claims or in defense." Tex. R. Civ. P. 194.2(d) cmt. 2. For
example, to illustrate the nature of the required disclosure, comment 2 provides that in a
claim for damages suffered in a car accident, the plaintiff would be required to state how
loss of past earnings and future earning capacity was calculated, and defendant "would be
required to disclose . . . any basis for contesting the damage calculations." Id.; see Harris
County v. Inter Nos, Ltd., 199 S.W.3d 363, 368 (Tex. App.-Houston [1st Dist.] 2006, no
pet.). 

 Rule 194.1 of the rules of civil procedure provides that a party served with a
discovery request must disclose information or material listed in rule 194.2 within thirty
days of service of the request. Tex. R. Civ. P. 194.1. Moreover, rule 193.6 governs the
admission of evidence not timely disclosed in discovery. Specifically, rule 193.6 provides:

 (a) Exclusion of Evidence and Exceptions. A party who fails to make,
amend, or supplement a discovery response in a timely manner may not
introduce in evidence the material or information that was not timely
disclosed, or offer the testimony of a witness (other than a named party) who
was not timely identified, unless the court finds that:

 

 (1) there was good cause for the failure to timely, make, amend, or
supplement the discovery response; or

 

 (2) the failure to timely make, amend, or supplement the discovery response
will will not unfairly surprise or unfairly prejudice the other parties.


Tex. R. Civ. P. 193.6(a). The party offering the undisclosed evidence has the burden to
establish good cause or lack of surprise, which must be supported by the record. Tex. R.
Civ. P. 193.6(b); see also Williams v. County of Dallas, 194 S.W.3d 29, 32 (Tex.
App.-Dallas 2006, pet. denied); Norfolk S. Ry. Co. v. Bailey, 92 S.W.3d 577, 581 (Tex.
App.-Austin 2002, no pet.). Rule 193.6(a) is mandatory, and the penalty--exclusion of
evidence--is automatic, absent a showing of (i) good cause, (ii) lack of unfair surprise or
(iii) lack of unfair prejudice. Lopez v. La Madeleine of Tex., Inc., 200 S.W.3d 854, 860
(Tex. App.-Dallas 2006, no pet.); Harris County, 199 S.W.3d at 368. The purpose behind
this rule and its accompanying sanction is to prevent trial by ambush. See Aetna Cas. &
Sur. Co. v. Specia, 849 S.W.2d 805, 807 (Tex.1993) (applying former Rule 215(5)); see
also Harris County, 199 S.W.3d at 368. 

 The good cause exception permits a trial court to excuse a failure to comply with
discovery in difficult or impossible circumstances. Alvarado v. Farah Mfg. Co., 830 S.W.2d
911, 915 (Tex. 1992) (explaining that counsel should not be excused from the
requirements of the rule without a strict showing of good cause). However, the following
factors, standing alone, do not constitute good cause: inadvertence of counsel, lack of
surprise, or uniqueness of the excluded evidence. Id.; see Sharp v. Broadway Nat'l Bank,
784 S.W.2d 669, 671 (Tex. 1990) (per curiam). "Failing to timely supplement discovery
can lead to the exclusion of key evidence and effectively grant the opponent certain
victory." Kidd v. Paxton, 1 S.W.3d 309, 312 n.5 (Tex. App.-Amarillo 1999, pet. denied).

 2. Discussion

 In the instant case, the record reflects that Keystone first served their discovery
requests on Lanai on October 13, 2003, and Lanai responded that "Plaintiffs are still in the
process of calculating damages and will supplement this response as required by the
rules." On June 14, 2004, the trial court entered a discovery control order, which stipulated
that the parties "shall complete all discovery on or before August 20, 2004" and that "all
documents and information required by Texas Rule of Civil Procedure 194 . . . must be
produced by July 30, 2004." Therefore, Lanai had from October 13, 2003 (the date it was
first served with Keystone's discovery request) until July 30, 2004--approximately nine
months--to provide an amount and calculation of economic damages to Keystone, which
it failed to do. Lanai supplemented their response to Keystone's discovery request
regarding the amount and calculation of economic damages twice, stating in both
responses that: "Plaintiffs are still in the process of calculating damages and will
supplement this response as required by the rules." 

 The record further reflects that Keystone filed a motion to exclude damage
testimony presented by Lanai on the second day of trial, and the trial court overruled this
motion. The record also supports Keystone's contention that it repeatedly objected to trial
testimony of economic damages. (12) In fact, the trial court allowed Keystone to have a
running objection to any damages evidence presented at trial. It was not until after both
the plaintiff and defendant had rested their case-in-chief on October 11, 2005, that Lanai
finally provided Keystone and the trial court, for that matter, with an amount and calculation
of economic damages. It is clear from our review of the record that the trial court based
its findings of fact and final judgment upon Lanai's amount and calculation of economic
damages provided on October 11, 2004. (13) 

 Lanai contends that they relied upon depositions and attachments thereto of Falk,
Judy Allen, and Gene Allen, which were timely produced to Keystone, to establish
economic damages sustained. Lanai further contends that Keystone has failed to establish
that the trial court's denial of Keystone's motion to exclude Lanai's damages evidence
resulted in an improper judgment. We disagree. 

 In our review of the record, it is clear that Lanai failed to include deposition
testimony of Falk, Judy Allen, and Gene Allen in the record. In their response to
Keystone's objection to their economic damages evidence, Lanai includes the cover sheet
for Judy Allen's deposition taken on August 5, 2004, and the cover sheet for Gene Allen's
deposition taken on August 11, 2004. Lanai failed to attach copies of the substance of the
depositions taken to any motions presented to the trial court. (14) Furthermore, Lanai has
neither included Falk's alleged deposition in the record nor designated Falk as a potential
witness or expert witness on damages. 

 Lanai did, however, include an expert report completed by Cooper in their response
to Keystone's objections to their economic damages. However, Cooper's report does not
address the amount or calculation of economic damages sustained by Lanai. In fact, Lanai
designated Cooper as an expert testifying "regarding the condition of both houses at the
date of his inspection" rather than on economic damages. The evidence demonstrates that
Lanai submitted a variety of invoices and sales receipts into the record; however, Lanai
failed to organize the evidence into a cognizable calculation of economic damages. 

 The record does contain a second motion for continuance of trial filed by Lanai on
October 4, 2004. In their motion for continuance, Lanai requested that the trial court give
it the "opportunity for hearing to show that any failure to timely make, amend or supplement
discovery responses will not unfairly surprise or unfairly prejudice Defendants or that there
is good cause for any failure to timely supplement." The trial court denied Lanai's second
motion for continuance and commenced the bench trial. (15) The evidence demonstrates that
Lanai had approximately nine months to produce the amount and calculation of their
economic damages sustained by the time this motion was filed. It is clear to us that Lanai
did not timely disclose the amount and calculation of the economic damages it sustained
to Keystone. See Tex. R. Civ. P. 194.1, 194.2(d).

 On appeal, Lanai attempts to shift the burden of proving good cause, unfair
prejudice, or unfair surprise to Keystone. However, rule 193.6 clearly provides that the
burden of proving good cause, lack of unfair prejudice, or lack of unfair surprise is on the
party--Lanai--seeking to introduce evidence that was not timely disclosed. Tex. R. Civ.
P. 193.6(b). Additionally, rule 193.6 requires that the record support a finding of good
cause, unfair prejudice, or unfair surprise. See id. In our review of the record, it is clear
that Lanai has not provided evidence to support a finding of good cause, lack of unfair
prejudice, or lack of unfair surprise for their failure to timely disclose economic damages. 
The trial court made the following observation regarding Lanai's untimely disclosure:

 THE COURT: Well, what do the rules require? You know, over and
over and over in this case you folks have not been
timely with submitting your discovery, but a lot of this
stuff if it goes up, you're in serious trouble. You know,
you can't come into Court and tell me, well, hey, this is
what we do judge somewhere [sic]. You know,
somebody is going to sit down and say you called and
made these rules and let you go ahead and make your
record because there was no jury in this case.

 

 MS. CARTER: I understand, Your Honor.

 

 THE COURT: You may have serious problems when you respond or
fail to respond the way you've failed to respond in this
case.

Moreover, the record does not reflect that Lanai established a rule 193.6 exception. See
Tex. R. Civ. P. 193.6(b). 

 On appeal, Lanai deemed it important to note that Keystone did not provide an
expert on damages at trial and that the lack of a damages expert demonstrates that
Keystone was not contesting damages. However, it is apparent to this Court that a
possible reason why Keystone did not provide an expert on damages at trial was because
Lanai did not timely provide a damage amount or calculation of which to rebut. We
conclude, therefore, that the trial court did not follow the guiding rules on discovery
requests and responses, specifically rules 193.6, 194.1, and 194.2. See Tex. R. Civ. P.
193.6, 194.1, 194.2. We further conclude that the trial court, in fashioning its judgment,
improperly relied on Lanai's "SUBMISSION REGARDING REQUEST FOR DAMAGES,"
which was not timely produced. As such, we find that the trial court abused its discretion
in denying Keystone's motion to exclude evidence of economic and actual damages and
admitting evidence of Lanai's economic damages. 

 Moreover, because we have concluded that Lanai failed to timely provide evidence
of economic damages, Lanai cannot establish any of their causes of action. That is
because a damages finding is among the essential elements for all of Lanai's causes of
action. (16) Accordingly, we sustain appellant's first issue. 

B. Attorney's Fees

 In their twentieth issue, Keystone asserts that Lanai failed to timely produce attorney
billing records in response to discovery requests and did not demonstrate good cause for
failing to produce such records. Keystone further asserts that there is legally and factually
insufficient evidence to establish that the trial court's awarding of attorney's fees to Lanai
was reasonable and necessary. Lanai, on the other hand, contends that a court may
determine a reasonable fee for legal services rendered in a case even if no evidence is
offered. Lanai further contends that as the prevailing party at trial, it was entitled to receive
attorney's fees, that the calculation of the attorney's fees was reasonably based on the
complexity of the case (Lanai deemed this case to be "extremely complex"), and that the
fee calculation was at the low end of the range that trial counsel typically charges clients.

 1. Applicable Law

 An award of attorney's fees is reviewed under an abuse of discretion standard. Dail
v. Couch, 99 S.W.3d 390, 391 (Tex. App.-Corpus Christi 2003, no pet.). To recover
attorney fees under section 38.001 of the civil practice and remedies code, a party must: 
(1) prevail on a cause of action for which attorney fees are recoverable; and (2) recover
damages. Tex. Civ. Prac. & Rem. Code Ann. § 38.001; see Green Int'l v. Solis, 951
S.W.2d 384, 390 (Tex. 1997). 

 2. Discussion

 In its conclusions of law, the trial court determined that Lanai was entitled to
"recover their reasonable and necessary attorneys' [sic] fees under the DTPA and under
§ 38.001 of the Texas Civil Practice & Remedies Code." (17) Furthermore, in its findings of
fact, the trial court awarded Lanai $148,303.00 in reasonable and necessary attorney's
fees. Because we have found that Lanai's untimely disclosure of economic damages
would result in a reversal of all of their causes of action, Lanai would not be entitled to
attorney's fees under either the DTPA or section 38.001 of the Texas Civil Practice and
Remedies Code. (18) See Tex. Bus. & Com. Code Ann. §§ 17.46(a), 17.50(a)(1), 17.50(d)
(Vernon Supp. 2007); Tex. Civ. Prac. & Rem. Code Ann. § 38.001; see also Doe v. Boys
Clubs of Greater Dallas, 907 S.W.2d 472, 478 (Tex. 1995). Given that we have found that
Lanai would not be entitled to attorney's fees under either the DTPA or section 38.001 of
the civil practice and remedies code, we conclude that the trial court abused its discretion
in awarding Lanai attorney's fees. Accordingly, we sustain Keystone's twentieth issue. 

III. Conclusion

 In conclusion, because we have sustained Keystone's first and twentieth issues on
appeal, we need not address their remaining issues. (19) Tex. R. App. P. 47.1. We therefore
reverse the judgment of the trial court and render judgment in favor of appellants.


 
 
 __________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 28th day of February, 2008.

 
1. The Part I Agreement required Keystone to provide the Allens with schematic plans, the design
development plan, the construction budget estimate, the revised design development and budget estimate,
and an architectural model. The Part I Agreement also provided that Keystone would be paid a 7% fee for
these services. The fee amount was to be derived from the total construction cost of the two houses.
2. The Allens allege that they intended to move into one of the houses upon completion of the
construction project, whichever house did not sell first.
3. In their submission of October 11, 2004, regarding Keystone's request for damages, Lanai notes
that the final construction cost for the Avivar house were $444,456.00 and the final construction cost for the
Brook house were $402,624.00.
4. In the interim, the bank sued the Allens to collect the difference between the loan amounts and the
amounts received on the foreclosure sales for the Brook and Avivar houses. Judy Allen testified that they
have a "deficiency of close to $400,000 with the bank . . . ."
5. The record contains an order granting Keystone's motion for summary judgment as to Lanai's claims
for breach of fiduciary duty and negligence per se signed on October 7, 2004.
6. The record does not contain an order of the trial court granting Lanai's motion for leave.
7. Lanai contends that one of the purposes for its motion for continuance was for more time to provide
Keystone with information regarding the amount and calculation of economic damages sustained in
accordance with rule 194.2(d). See Tex. R. Civ. P. 194.2(d).
8. In their objection to Lanai's evidence of damages, Keystone asserts that it first served Lanai with
requests for disclosure on October 13, 2003 and Lanai first responded to Keystone's requests on August 2,
2004. In their August 2, 2004 response, Lanai stated that: "Plaintiffs are still in the process of calculating
damages and will supplement this response as required by the rules." Keystone further asserted that Lanai
attempted to supplement their responses on September 3, 2004 and September 13, 2004, "without any
change[s]" to the August 2, 2004 language. As of October 4, 2004, Keystone asserted that Lanai had yet to
supplement their response with actual damage amounts and calculations. 
9. Judy Allen's deposition was taken on August 5, 2004, and Gene Allen's deposition was taken on
August 11, 2004. However, the substantive contents of the depositions were not attached to Lanai's
response.
10. The record does not contain a signed order from the trial court overruling Keystone's objection to
Lanai's economic damages; however, Keystone acknowledges this ruling in their appellate brief.
11. We highlight Lanai's diminution of market value calculation because it is the calculation the trial
court appears to rely on in awarding Lanai damages. We note that this calculation was not admitted into
evidence at trial.
12. Keystone notes that their objections were based on "Plaintiff's failure to answer requests for
disclosure and produce some of the documents upon which their claims were based." 
13. As previously mentioned, the trial court, in its final judgment, awarded Lanai $382,335 in actual
damages, $764,670 (exactly two times the trial court's actual damage award of $382,355, thus accounting
for a trebling of the actual damages awarded) in exemplary damages, $148,303 in attorney's fees, additional
attorney's fees in the event of an appeal, and 10% in pre-judgment interest. The trial court's actual damages
award is the exact same figure provided in Lanai's Diminution of Market Value calculation submitted on
October 11, 2004. For example, in its finding of fact, under the heading "Plaintiff's Damages," the trial court
noted that "Lanai Development, L.L.C.'s economic damages were calculated by aggregating the diminution
in market value of the Avivar house ($220,000.00), the loss of value of the Brook house ($98,000.00), the
amount of overcharge for Donald Thompson's [one of many subcontractors for the project] fees ($17,000.00),
the amount of FRS Roofing's fee that A.J. Garza promised to pay ($20,000.00), and the amount of
Defendant's overcharges ($27,335.00) for a total of Three Hundred Eighty-two Thousand Three Hundred
Thirty-five and 00/100 Dollars ($382,335.00)." This language directly corresponds to Lanai's diminution of
market value calculations submitted on October 11, 2004.


 We are unable to derive the origin of the trial court's exemplary damage award, as it could be a result
of the trial court's Deceptive Trade Practices Act finding or a punitive damage finding associated with one or
more of Lanai's common law tort claims. 


 Furthermore, nowhere in its findings of fact and conclusions of law did the trial court make a finding
that Lanai had timely disclosed the amount and calculation of economic damages to Keystone. 
14. We do note that depositions are not usually filed with the trial court. However, Lanai continually
references the deposition testimony of the Allens and Falk in establishing its damages. The record reflects
that this Court and the trial court have not been provided with copies of the deposition testimony to
substantiate Lanai's contentions. 
15. The trial court may, but is not required to, grant a continuance or postpone a trial temporarily to
allow discovery regarding the matter not timely identified during discovery. See Tex. R. Civ. P. 193.6(c); see
also Talley Constr. Co. v. Rodriguez, No. 01-03-01147-CV, 2006 Tex. App. LEXIS 2721, at **24-25 (Tex.
App.-Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op. on reh'g). Clearly, the trial court's denial of Lanai's
motion for continuance was a discretionary ruling.
16. The supreme court in Doe v. Boys Clubs of Greater Dallas noted that the elements of a DTPA
claim are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts,
and (3) these acts constituted a producing cause of the consumer's damage. 907 S.W.2d 472, 478 (Tex.
1995) (emphasis added). For a negligence cause of action, a plaintiff must produce evidence of (1) a legal
duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) damages proximately caused by
that breach. Praesel v. Johnson, 967 S.W.2d 391, 394 (Tex. 1998) (emphasis added). The elements of a
breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the
defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result
in injury to the plaintiff or benefit to the defendant. See Punts v. Wilson, 137 S.W.3d 889, 891 (Tex.
App.-Texarkana 2004, no pet.) (emphasis added); see also Guerrero v. Salinas, No. 13-05-323-CV, 2006
Tex. App. LEXIS 8562, at *39 (Tex. App.-Corpus Christi Aug. 10, 2006, no pet.) (mem. op.) (upholding the
trial court's awarding of actual damages, including out-of-pocket losses and economic injuries resulting from
a breach of fiduciary duty). To prevail on a breach of contract claim, a party must prove that (1) a valid
agreement between plaintiff and defendant existed, (2) the plaintiff performed or tendered performance, (3)
the defendant breached the agreement, and (4) the plaintiff sustained damages as a result of the breach. 
Beverick v. Koch Power Co., 186 S.W.3d 145, 150 (Tex. App.-Houston [1st Dist.] 2005, pet. denied)
(emphasis added) (citing Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.-Houston
[1st Dist.] 2002, pet. denied)). Finally, a fraud cause of action requires "a material misrepresentation, which
was false, and which was either known to be false when made or was asserted without knowledge of its truth,
which was intended to be acted upon, which was relied upon, and which caused injury." Formosa Plastics
Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998) (noting that direct
damages for common-law fraud can be in the form of out-of-pocket damages or benefit-of-the-bargain
damages) (emphasis added).
17. The record reflects that the contracts between Lanai and Keystone are silent as to attorney's fees.
18. Section 17.50(d) provides that under the DTPA, attorney's fees are only awarded to the consumer
if he prevails in a lawsuit. Tex. Bus. & Com. Code Ann. § 17.50(d) (Vernon Supp. 2007). Because we have
concluded that Lanai failed to timely produce evidence of economic damages and therefore failed to establish
an essential element of their DTPA causes of action, Lanai would not be entitled to attorney's fees pursuant
to their DTPA claim. See id.; see also Doe, 907 S.W.2d at 478. 


 With respect to section 38.001 of the civil practice and remedies code, Lanai has not prevailed on any
causes of action on appeal and has failed to establish damages; therefore it would not be entitled to attorney's
fees. Green Int'l v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); see Tex. Civ. Prac. & Rem. Code Ann. § 38.001. 
19. Because we have concluded that Lanai has failed to establish damages for any of their causes of
action, there are no damages upon which pre-judgment or post-judgment interest can be calculated, making
it unnecessary for us to consider Keystone's twenty-second issue on appeal.